**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARILYN V.,<br><br>    Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant. | Civil Action No. 20-15869 (SDW)<br><br>**OPINION**<br><br>August 19, 2022 |

**WIGENTON**, District Judge.

Before this Court is Plaintiff Marilyn V.'s ("Plaintiff") [1] appeal of the final administrative decision of the Commissioner of Social Security ("Commissioner") with respect to Administrative Law Judge Sharon Allard's ("ALJ Allard") denial of Plaintiff's claim for disability insurance benefits ("DIB") and supplemental security income ("SSI") under the Social Security Act (the "Act"). This Court has subject matter jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Venue is proper pursuant to 28 U.S.C. § 1391(b). This appeal is decided without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, this Court finds that ALJ Allard's factual findings are supported by substantial evidence and that her legal determinations are correct. Therefore, the Commissioner's decision is **AFFIRMED**.

---

[1] Plaintiff is identified only by her first name and last initial in this opinion, pursuant to Chief District Judge Freda Wolfson's Standing Order 2021-10, issued on October 1, 2021, *available at* https://www.njd.uscourts.gov/sites/njd/files/SO21-10.pdf.

I.     **PROCEDURAL AND FACTUAL HISTORY**

    A.     **Procedural History**

Plaintiff filed for DIB on August 10, 2016, and SSI on September 17, 2016, alleging disability beginning on April 11, 2016, due to a brain aneurysm, thyroid disease, sciatica, back pain, headaches, a bulging disc, a herniated disc, and high blood pressure. (D.E. 8 (Administrative Record ("R.")) at 86, 282–83.) The claims were denied initially on January 10, 2017, and upon reconsideration on September 28, 2017. (R. 169–175, 178–183.) ALJ Allard held an administrative hearing on July 15, 2019, and issued a written decision on October 28, 2019, finding that Plaintiff was not disabled. (R. 13–23, 29–83.) The Appeals Council denied review on September 29, 2020. (R. 1–6.) Plaintiff then filed the instant appeal in this Court, and the parties completed briefing. (D.E. 1, 13, 16, 17.)[2]

    B.     **Factual History**

Plaintiff is fifty years old and alleges that she became disabled on April 11, 2016 (the "alleged onset date"), when she was forty-four years old. (R. 22–23.) She has an 11th-grade education and previously worked as an armored vault attendant. (R. 35, 78–79.) The following is a summary of the relevant medical evidence in the record.

<u>Musculoskeletal Impairments</u>

In 2011, five years prior to her alleged onset of disability, Plaintiff was involved in a slip and fall accident, resulting in chronic back pain that was subsequently diagnosed as sciatica, arthritis, and degenerative disc disease. (R. 723.) Plaintiff's back pain was unsuccessfully treated with six epidural injections. (*Id.*) After her alleged onset date, X-rays of Plaintiff's lumbar spine

---

[2] Plaintiff's reply brief was due on October 29, 2021, under Local Civil Rule 9.1(e)(3), but Plaintiff filed it only on March 24, 2022. (D.E. 17.) This Court will not consider the reply because it was filed almost five months late, without a request for an extension of time or even an acknowledgement of the delay.

on September 21, 2016 revealed that she had facet arthritis and scoliosis at the L4-5 and L5-S1 levels bilaterally, with associated bone production. (R. 517.)

On December 20, 2016, at a consultative examination conducted by Rambhai Patel, M.D., Plaintiff reported that she suffered with lower back pain that radiated to her right leg. (R. 621.) Dr. Patel, however, reported that Plaintiff was able to walk without any assistive device and had no neurological deficits. (R. 622.) A straight leg raising test was questionably positive because Plaintiff refused to raise her right lower extremity. (*Id.*)

Treatment notes from University Hospital from May 17, 2017, indicate that Plaintiff continued to experience lower back pain after being seen by pain management specialists on April 4, 2017, at which time Plaintiff underwent a right sided medial branch block of the L3, L4, and L5 disc spaces, with no reported improvement after the injection. (R. 694.) Plaintiff continued to report axial back pain but denied any radicular symptoms or saddle anesthesia. (*Id.*) A physical examination showed tenderness to palpitation in the bilateral paraspinal muscles of the lower back, decreased range of motion, and negative straight leg raising bilaterally. (R. 695.) On May 25, 2017, records from University Hospital's neurology clinic indicate that Plaintiff had normal range of motion with no edema, tenderness, deformity, or signs of injury. (R. 699.) She had fully intact strength in her upper and lower extremities with normal muscle bulk and tone and no atrophy. (*Id.*)

On February 9, 2019, an MRI of Plaintiff's right knee from revealed that Plaintiff had a radial tear of the medial meniscus body with partial extrusion, and quadriceps tendinosis and enthesopathy. (R. 728–29.) There was also low-grade chondromalacia in the trochlea and medial compartment. (R. 729.)

Brain Aneurysm and Transient Ischemic Attacks

Plaintiff suffered a brain aneurysm in April 2015, causing residual symptoms, including persistent headaches, but without associated symptoms like vomiting or nausea. (R. 621–22, 723.) However, hospital and treatment records showed that she remained neurologically sound. (R. 694, 710–11.) In December 2016, Dr. Patel reported Plaintiff had no gross neurological deficits. (R. 622.) Treatment notes from University Hospital from May 25, 2017, indicate that Plaintiff had preserved motor and sensory function in her bilateral lower extremities, was able to walk on her heels and toes, and had a normal tandem gait. (R. 695, 700.) Plaintiff presented as alert and fully oriented with normal speech, language, and memory; intact facial sensation; no facial droop; and full and symmetric facial expression. (R. 699.) On March 18, 2019, Plaintiff was admitted to JFK Medical Center for a transient ischemic attack secondary to clot formation in the basilar stent. (R. 760, 803–04.) An MRI of her brain and CT scan of her head revealed no evidence of recurrent infarct, hemorrhage, or mass effect. (R. 758, 761.)

Mental Impairments

Plaintiff met with two consultative examiners regarding her mental impairments. (*See* R. 628, 630, 697, 724–25.) On December 21, 2016, during a consultative examination conducted by Edward Linehan, Ph.D., Plaintiff reported a fear of dying, worry, panic attacks, and feelings of dread. (R. 628.) On a mental status examination, Plaintiff was well oriented with good eye contact and no psychotic features evident in her functioning. (R. 630.) Plaintiff had some impairment on measures of attention, concentration, and memory. (*Id.*)

Subsequent treatment notes from University Hospital on May 25, 2017, indicate that Plaintiff reported having some residual stutter, panic attacks, and anxiety, which had improved markedly. (R. 697.)

4

At a consultative examination conducted by Steven Yalkowsky, Ph.D., on September 25, 2017, Plaintiff presented as pleasant and cooperative with age appropriate social skills and adequate hygiene and grooming. (R. 724.) She maintained consistent eye contact and had adequate receptive skills and logical, coherent, and goal directed thought processes. (*Id.*) Dr. Yalkwosky observed no abnormal thought content or serious psychopathology. (*Id.*) Plaintiff was able to repeat a short list of three words immediately after presentation, but reported that she could not recall any of the words after approximately five minutes of interference. (R. 725.) She had difficulty demonstrating a general fund of knowledge as she incorrectly reported the name of the current president, indicated that the city was New Jersey, stated that the month was October, and stated that she did not know how many seconds were in a minute. (*Id.*) She claimed not to understand how to repeat digits backwards or how to complete serial sevens, and stated that she could not spell the word "world" either forwards or backwards. (*Id.*) Dr. Yalkowsky opined that Plaintiff might be intentionally responding incorrectly in order to make her limitations appear to be more significant because her performance was generally inconsistent with her overall presentation. (*Id.*) Dr. Yalkowsky diagnosed Plaintiff with panic disorder with agoraphobia, and opined that the overall impact of Plaintiff's impairments was moderate. (*Id.*)

Stage Agency Physician Opinions

On January 3, 2017, state agency physician Nancy Simpkins, M.D., reviewed Plaintiff's medical records and opined that Plaintiff could perform work that did not require her to climb ladders, ropes, or scaffolds and avoided all exposure to hazards. (R. 95–97.) On reconsideration, on August 9, 2017, state agency physician Arvind Chopra, M.D., reviewed the record and affirmed Dr. Simpkins' opinion. (R. 138.)

On January 4, 2017, state agency psychologist Leslie Williams, Ph.D., reviewed Plaitniff's

medical records and opined that Plaintiff has mild limitations of activities of daily living; moderate difficulties in social functioning and concentration, persistence, or pace; and no episodes of decompensation. (R. 94.) On September 26, 2017, on reconsideration, state agency physician Carlos Jusino-Berrios, M.D., reviewed the record and opined that Plaintiff has moderate limitations in understanding, remembering, or applying information; mild limitations in interacting with others; moderate limitations in concentrating, persisting, or maintaining pace; and moderate limitations in adapting or managing oneself. (R. 135.)

### C. Hearing Testimony

At the administrative hearing on July 15, 2019, Plaintiff appeared with her attorney and testified before ALJ Allard. (R. 29–83.) Plaintiff testified that she drives to places close to her home three or four times a week, but not anywhere far. (R. 37.) Plaintiff has had problems using the stairs in her apartment since her fall in February 2018, and she had surgery on her left knee in April 2019. (R. 39–40.) She also had two mini-strokes in 2019. (R. 40.) When asked about the jobs that she had held before her vault attendant job, she claimed that she could not remember it and stated that she has problems remembering a lot of things from her past. (R. 45–46.)

Plaintiff testified that the aneurysm affects the right side of her body, including weakness in her right hand, difficulty with her right eye, and pain in her right thigh. (R. 53–54.) Plaintiff testified that there are times where she has bent down and cannot pick herself up because of a pinched nerve in her back. (R. 55.) Plaintiff also experiences dizziness, speech difficulty, numbness, and headaches. (R. 57, 66–67.) Plaintiff estimated that she can sit for about 20 to 30 minutes, and stand for the same amount. (R. 64–65.) Plaintiff can walk about half a block before her knees start to hurt. (R. 67.) Plaintiff claimed that her knees have a lot of swelling, pain, and fluid in them. (R. 68.)

Plaintiff testified that she has panic attacks where she thinks she is going to die. (R. 72.) She stated that her anxiety is over having another occurrence of the aneurysm. (R. 73.) Plaintiff claimed she has difficulty sleeping and that whenever the phone rings, she thinks something has happened to her children. (*Id.*) Plaintiff also testified that she spends most of her day crying, does not want to do anything, and has "lost interest in life." (R. 74.) She spends most of the day watching TV and no longer takes care of her grandchild because it is too much for her. (*Id.*) Plaintiff testified that she still has pain and swelling in her hands. (R. 75.) During the hearing, Plaintiff expressed that she was feeling dizzy and needed to take a break. (R. 77.)

Rocco Meola ("VE Meola"), an impartial vocational expert, also testified at the hearing. (R. 29, 78–80.) VE Meola testified that an individual with Plaintiff's vocational background and RFC, as assessed by ALJ Allard, could not perform Plaintiff's previous work, but could perform other jobs that exist in significant numbers in the national economy, including jobs as a table worker, scale operator, and document prep worker. (R. 80.)

## II.   LEGAL STANDARD

### A.   Standard of Review

In Social Security appeals, this Court has plenary review of the legal issues decided by the Commissioner. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). Yet, this Court's review of the ALJ's factual findings is limited to determining whether there is substantial evidence to support those conclusions. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).

Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted). Thus, substantial evidence is "less than a preponderance of the evidence, but 'more than a mere

scintilla.'" *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Importantly, "[t]his standard is not met if the Commissioner 'ignores, or fails to resolve, a conflict created by countervailing evidence.'" *Bailey*, 354 F. App'x at 616 (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)). However, if the factual record is adequately developed, "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Daniels v. Astrue*, No. 4:08-cv-1676, 2009 WL 1011587, at *2 (M.D. Pa. Apr. 15, 2009) (internal quotation marks omitted) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). "The ALJ's decision may not be set aside merely because [a reviewing court] would have reached a different decision." *Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x 475, 479 (3d Cir. 2007) (citing *Hartranft*, 181 F.3d at 360). This Court is required to give substantial weight and deference to the ALJ's findings. *See Scott v. Astrue*, 297 F. App'x 126, 128 (3d Cir. 2008). Nonetheless, "where there is conflicting evidence, the ALJ must explain which evidence he accepts and which he rejects, and the reasons for that determination." *Cruz*, 244 F. App'x at 479 (citing *Hargenrader v. Califano*, 575 F.2d 434, 437 (3d Cir. 1978)).

In considering an appeal from a denial of benefits, remand is appropriate "where relevant, probative and available evidence was not explicitly weighed in arriving at a decision on the plaintiff's claim for disability benefits." *Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3d Cir. 1979) (internal quotation marks omitted) (quoting *Saldana v. Weinberger*, 421 F. Supp. 1127, 1131 (E.D. Pa. 1976)). Indeed, a decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny v. Harris*, 745 F.2d 210, 221–22 (3d Cir. 1984) (citations omitted).

8

### B. The Five-Step Disability Test

A claimant's eligibility for social security benefits is governed by 42 U.S.C. § 1382. An individual will be considered disabled under the Act if the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" lasting continuously for at least twelve months. 42 U.S.C. § 423(d)(1)(A). The impairment must be severe enough to render the individual "not only unable to do his previous work but [unable], considering his age, education, and work experience, [to] engage in any kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). A claimant must show that the "medical signs and findings" related to his or her ailment have been "established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged." 42 U.S.C. § 423(d)(5)(A).

To make a disability determination, the ALJ follows a five-step sequential analysis. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see also Cruz*, 244 F. App'x at 480. If the ALJ determines at any step that the claimant is or is not disabled, the ALJ does not proceed to the next step. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

Step one requires the ALJ to determine whether the claimant is engaging in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). SGA is defined as work that "[i]nvolves doing significant and productive physical or mental duties . . . for pay or profit." 20 C.F.R. §§ 404.1510, 416.910. If the claimant engages in SGA, the claimant is not disabled for purposes of receiving social security benefits regardless of the severity of the

9

claimant's impairments. *See* 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the individual is not engaging in SGA, the ALJ proceeds to step two.

Under step two, the ALJ determines whether the claimant suffers from a severe impairment or combination of impairments that meets the duration requirement found in Sections 404.1509 and 416.909. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or a combination of impairments is not severe when medical and other evidence establishes only a slight abnormality or combination of abnormalities that would have a minimal effect on an individual's ability to work. 20 C.F.R. §§ 404.1521, 416.921; Social Security Ruling ("SSR") 85-28, 96-3p, 96-4p. An impairment or a combination of impairments is severe when it significantly limits the claimant's "physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). If a severe impairment or combination of impairments is not found, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the ALJ finds a severe impairment or combination of impairments, the ALJ then proceeds to step three.

Under step three, the ALJ determines whether the claimant's impairment or combination of impairments is equal to, or exceeds, one of those included in the Listing of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If an impairment or combination of impairments meets the statutory criteria of a listed impairment as well as the duration requirement, the claimant is disabled and entitled to benefits. 20 C.F.R. §§ 404.1520(d), 416.920(d). If, however, the claimant's impairment or combination of impairments does not meet the severity of the listed impairment, or if the duration is insufficient, the ALJ proceeds to the next step.

Before undergoing the analysis in step four, the ALJ must determine the claimant's RFC. 20 C.F.R. §§ 404.1520(a), 404.1520(e), 416.920(a), 416.920(e). An individual's RFC is the

individual's ability to do physical and mental work activities on a sustained basis despite limitations from his or her impairments. 20 C.F.R. §§ 404.1545, 416.945. The ALJ considers all impairments in this analysis, not just those deemed to be severe. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2); SSR 96-8p. After determining a claimant's RFC, step four then requires the ALJ to determine whether the claimant has the RFC to perform the requirements of his or her past relevant work. 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f). If the claimant is able to perform his or her past relevant work, he or she will not be found disabled under the Act. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f). If the claimant is unable to resume his or her past work, the disability evaluation proceeds to the fifth and final step.

At step five, the ALJ must determine whether the claimant is able to do any other work, considering his or her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). Unlike in the first four steps of the analysis where the claimant bears the burden of persuasion, at step five the Social Security Administration ("SSA") is "responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that [the claimant] can do, given [the claimant's RFC] and vocational factors." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2). If the claimant is unable to do any other SGA, he or she is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

### III. DISCUSSION

#### A. The ALJ's Decision

On October 28, 2019, ALJ Allard issued a decision concluding that Plaintiff was not disabled from April 11, 2016, the alleged onset date, through the date of the decision. (R. 23.) At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. (R. 16.) At step two, she found that Plaintiff had the following severe

11

impairments: (1) degenerative joint disease of the knee, (2) degenerative disc disease of the lumbar spine, (3) affective disorder, and (4) anxiety disorder. (*Id.*) ALJ Allard did not classify Plaintiff's hand pain and migraine headaches as severe impairments due to lack of objective evidence. (*Id.*) At step three, the ALJ concluded that Plaintiff's impairments, individually and in combination, did not meet or medically equal the severity of any listing, including Listing 1.02 (major joint dysfunction), Listing 1.04 (spinal disorders), Listing 12.04 (depressive, bipolar, and related disorders), and Listing 12.06 (anxiety and obsessive-compulsive disorders). (R. 16–18.)

> Assessing Plaintiff's RFC prior to step four, the ALJ found that Plaintiff could:
>
> [P]erform sedentary work . . . except . . . the claimant can lift and carry up to ten pounds, stand and/or walk two hours in an eight-hour workday, and sit six hours in an eight-hour workday. Additionally, the claimant can occasionally climb ramps and stairs, and occasionally balance, kneel, stoop, and crouch. The claimant cannot crawl or climb ladders, ropes or scaffolds, or work around hazards, including moving mechanical parts or at unprotected heights. The claimant cannot have exposure to concentrated temperature extremes, heat or sunlight. Furthermore, the claimant can understand and execute simple and routine tasks. Lastly, the claimant can make simple decisions and adapt to occasional changes in essential work tasks.

(R. 18.) At step four, the ALJ found that Plaintiff was unable to perform her past relevant work as a vault attendant. (R. 21.) At step five, the ALJ relied on VE Meola's testimony to find that Plaintiff could perform other jobs, including table worker, scale operator, and document prep worker. (R. 23.) ALJ Allard therefore concluded that Plaintiff was not disabled under the Act during the relevant period. (*Id.*)

  **B. Analysis**

On appeal, Plaintiff seeks reversal of the Commissioner's decision, or alternatively a remand for a full review of the evidence before a different ALJ. (*See* D.E. 13 at 35; D.E. 17 at 4.) Plaintiff argues that the ALJ (1) improperly evaluated the medical evidence, specifically at steps two and three of the sequential evaluation process and in evaluating Plaintiff's subjective

complaints, and (2) failed to comply with SSR 96-8p in assessing her residual functional capacity and thus failed to pose a complete hypothetical question to the vocational expert. (*See* D.E. 13 at 24–35; D.E. 17 at 1–4.) This Court considers the arguments in turn and finds each unpersuasive.

First, Plaintiff argues that the ALJ improperly evaluated the medical evidence and asks this Court to review the record. (D.E. 13 at 24–31; D.E. 17 at 1.) Specifically, Plaintiff argues that the ALJ's evaluation at steps two and three of the sequential evaluation process and Plaintiff's subjective complaints were not supported by substantial evidence. (D.E. 13 at 24–31.) With respect to step two of the sequential evaluation, Plaintiff has the burden of demonstrating that an impairment is "severe." *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987). In order to be considered "severe," an impairment must be medically determinable. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). A medically determinable impairment may not be established solely on the basis of symptoms alone but, rather, must be shown by medical signs or laboratory findings. *See* C.F.R. §§ 404.1529(a)-(b), 416.929(a)-(b). Additionally, so long as a claim is not denied at step two, it is not necessary for the ALJ to have specifically found any additional alleged impairment to be severe. *See Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 145 (3d Cir. 2007) (internal citation omitted). Accordingly, the relevant question at step two is not how many severe impairments exist, or whether they have all been properly named, but whether the claimant has at least one severe impairment that justifies the ALJ's proceeding to the next step of the sequential evaluation process. 20 C.F.R. §§ 404.1520(c), 416.920(c).

Here, the ALJ explained that although Plaintiff alleged disability due to hand pain and headaches, these conditions were not medically determinable impairments due to a lack of supporting medical evidence. (R. 16.) Although Plaintiff points to medical evidence documenting her complaints of hand pain and headaches, she points to no objective medical evidence or

laboratory findings establishing that these conditions are medically determinable impairments. (*See* D.E. 13 at 25–26.) Specifically, an MRI and CT scan of her head revealed no evidence of recent infarct, hemorrhage, or mass-effect. (R. 19, 20; *See* R. 758, 761.) Neurological examinations also showed that Plaintiff was within normal limits. (R. 19–20, 622, 695, 699–700.) Dr. Patel also reported that Plaintiff was able to perform both fine and gross movements with both hands and retained a normal grip. (R. 20, 622.) Overall, Plaintiff failed to present objective medical signs or laboratory findings establishing headaches and hand pain as medically determinable impairments and thus, substantial evidence supports the ALJ's finding that they were not severe. *See* C.F.R. §§ 404.1529(a)-(b), 416.929(a)-(b). Even if the ALJ had erred in finding that Plaintiff's headaches and hand pain were nonsevere impairments, this error was harmless because the ALJ found other severe impairments and continued on through step five of the sequential evaluation process. (R. 16–23.); *See Salles*, 229 F. App'x at 145. Thus, this Court cannot justify remand of the ALJ's decision.

Plaintiff also contends that the ALJ's evaluation at step three of the sequential evaluation process was not supported by substantial evidence. (D.E. 13 at 26–30.) Specifically, Plaintiff argues that the ALJ improperly cited her daily activities as a basis for finding only mild to moderate limitations in the "B" criteria areas, noting that the ability to do daily activities equated to the ability to work. (*Id.*) The "B" criteria of the mental disorders Listings require the ALJ to determine the degree of functional loss in four areas considered essential to the ability to work: (1) understanding, remembering, and applying information; (2) interacting with others; (3) the ability to concentrate, persist, or maintain pace; and (4) adapting or managing oneself. 20 C.F.R., Pt. 404, Subpt. P., App. 1, §§ 12.04, 12.06. These areas are rated on the following five point scale: none, mild, moderate, marked and extreme. 20 C.F.R. §§ 404.1520a(c)(4), 416.920a(c)(4). A claimant

may demonstrate that she meets Listings 12.04 and 12.06 by proving that she meets the Listings' "A" criteria, as well as having two marked or one extreme limitation in the Listings' "B" criteria areas. 20 C.F.R., Pt. 404, Subpt. P, App. 1, §§ 12.04, 12.06. Additionally, the issue of whether a claimant meets or equals the requirement of any impairment in the Listing of Impairments is reserved to the Commissioner, and opinions on this issue are not entitled to any special significance. *See* 20 C.F.R. §§ 404.1527(d)(2)-(3), 416.927(2)-(3).

Here, the ALJ found that Plaintiff was moderately limited in understanding, remembering, or applying information; mildly limited in interacting with others; moderately limited in concentrating, persisting, or maintaining pace; and moderately limited in adapting or managing oneself. (R. 17.) In making this finding, the ALJ notes evidence contradicting the evidence Plaintiff cites to in her attempt to support a finding of marked or extreme limitations. (R. 17.) For example, although Plaintiff reported having no social life, she nonetheless was able to go food shopping in stores and presented as pleasant and cooperative with age appropriate skills in a consultative examination. (R. 17, 65, 724.) Because Plaintiff's impairments did not cause at least two "marked" limitations or one "extreme" limitation in functioning, the ALJ reasonably found that the "B" criteria of Listings 12.04 and 12.06 were not satisfied. (R. 17.) The ALJ did not find that Plaintiff's daily activities equated to the ability to work, but found that these activities supported a finding that Plaintiff had no marked or extreme limitations in the "B" criteria areas. (*Id.*) Furthermore, the ALJ's evaluation of the "B" criteria areas was consistent with the opinion of Dr. Jusino-Berrios, who reviewed the record and opined that Plaintiff had moderate limitations in understanding, remembering, or applying information; mild limitations in interacting with others; moderate limitations in concentrating, persisting, or maintaining pace; and moderate limitations in adapting or managing oneself. (R. 135.) The mere presence of evidence

15

contradicting the evidence used in the ALJ's evaluation, which Plaintiff cites to, is not reason enough to overturn the ALJ's decision. (*See* D.E. 16 at 26–31.) Thus, substantial evidence supports the ALJ's evaluation at step three of the sequential evaluation process. This Court will not reverse, or re-weigh the evidence, simply because it could have resulted in Plaintiff's favor.

Substantial evidence also supports the ALJ's finding that Plaintiff did not meet or equal the criteria of Listings 1.02 or 1.04. (*See* R. 16–18.) ALJ Allard explained that Dr. Patel's consultative examination showed only questionable positive straight leg raising, Plaintiff had no neurological deficits, she was able to perform fine and gross movements with both hands, she had a normal grip, and she was able to walk without an assistive device. (R. 19; *See* R. 622.) The ALJ also noted that treatment records from University Hospital indicated that Plaintiff had preserved motor and sensory function in the bilateral lower extremities, had a normal gait; and had negative straight leg raising bilaterally. (R. 19; *See* R. 695, 699.) This evidence supports the ALJ's finding, and Plaintiff has not met her burden of producing objective evidence proving that Plaintiff met all of criteria set forth in the Listings. *See* 20 C.F.R. §§ 404.1512(a), 416.912(a). Although Plaintiff argues that the ALJ did not provide adequate explanation of her step three finding, the Third Circuit has affirmed that this type of analysis is sufficient. *See Johnson v. Comm'r of Soc. Sec.*, 398 F. App'x 727, 734 (3d Cir. 2010) (affirming the ALJ's step three finding where the ALJ found the plaintiff did not have an "impairment or combination or impairments that met or medically equaled any of the lifted impairments," cited the relevant listings, and explained why the impairments did not meet those listings (alterations omitted)). There was no error in ALJ Allard's step three evaluation, and thus this Court will affirm.

Plaintiff also argues that the ALJ's evaluation of Plaintiff's subjective complaints was not supported by substantial evidence. (D.E. 13 at 30–31.) "Allegations of pain and other subjective

symptoms must be supported by objective medical evidence." *Hartranft*, 181 F.3d at 362 (citation omitted). An individual's statements as to pain or other symptoms are not alone conclusive evidence of disability. 42 U.S.C. §§ 423(d)(5)(A), 1382c(a)(3)(H)(i). Rather, it is the ALJ's responsibility to determine the extent to which a claimant is accurately stating her degree of pain and level of disability. *Hartranft*, 181 F.3d at 362. An ALJ may discount a claimant's allegations about the intensity, persistence, or limiting effects of his symptoms where the evidence does not fully support those allegations, and "need only include in the RFC those limitations which he finds to be credible." *Salles*, 229 F. App'x at 147 (citations omitted).

Here, after careful consideration of the evidence, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms she alleged. (R. 19.) However, the ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the objective medical evidence for the reasons explained in her decision. (R. 19.) ALJ Allard cited to several facts to show the inconsistencies, such as Dr. Yalkwosky's opinion that Plaintiff might have been intentionally responding incorrectly to testing in order to make her limitations appear more significant, as her performance was generally inconsistent with her overall presentation. (R. 20; *See* R. 725.) Because Plaintiff's allegations of disabling symptoms and limitations were inconsistent with the overall record evidence, the ALJ was free to disregard them in assessing her RFC. Although Plaintiff cites to other portions of the record that she claims fully substantiate her subjective complaints (R. 27–28.), the task of this Court is not to determine whether the ALJ could have reached a different outcome, but whether a reasonable person could look at the evidence and reach the same conclusion as the ALJ. *See Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019). Thus, the ALJ's conclusion regarding Plaintiff's subjective complaints is reasonable and this Court will

affirm.

Second, Plaintiff argues that the ALJ's RFC assessment is not supported by substantial evidence because it does not include all of Plaintiff's limitations, particularly her subjective complaints, thus failing to comply with SSR 96-8p and failing to pose a complete hypothetical question to VE Meola. (D.E. 13 at 28–35.) SSR 96-8p requires that the "RFC assessment must first identify the individual's functional limitation or restrictions and assess his or her work-related abilities on a function-by-function basis." SSR 96-8p. However, "[c]ourts routinely affirm ALJ decisions without a written function-by-function analysis, where the ALJ's RFC determination rests upon substantial evidence." *Torres v. Comm'r of Soc. Sec.*, Civ. No. 14-6178, 2015 WL 8328346, at *8 (D.N.J. Dec. 8, 2015) (internal citations omitted). In order to show a lack of substantial evidence, a plaintiff must show that the ALJ overlooked certain functions.

Here, there is nothing in the record that shows that the ALJ overlooked the functions specified in SSR 96-8p. The ALJ specifically discussed Plaintiff's functional limitations and found that Plaintiff could perform sedentary work. (R. 18–21.) In assessing Plaintiff's RFC, the ALJ explained her rejection of Plaintiff's subjective complaints and why they were inconsistent with the rest of the record. (R. 20–21.) The ALJ also discussed the various medical opinions and the weight that she assigned to them. (*Id.*) ALJ Allard summarized her findings, noting that she "fully accounted for the overall evidence of record by limiting the claimant to a range of unskilled, sedentary exertional work with the ability to generally perform postural activities on an occasional basis, while avoiding hazards and temperature extremes." (R. 21.) The ALJ did not merely describe Plaintiff's RFC in general terms, but made specific findings in regard to the functions where limitations were found. *See Depover v. Barnhart*, 349 F.3d 563, 567 (8th Cir. 2003); *see also Brown v. Colvin*, Civ. No. 15-323, 2016 WL 6821877, *2 (E.D. Pa. Nov. 17, 2016) (internal

citation and quotation omitted). Thus, there is substantial evidence on the record to support the RFC finding.

Plaintiff further argues that because the ALJ's RFC assessment did not include all of her subjective complaints, the ALJ's hypothetical question to the VE was incomplete. (D.E. 13 at 30–31.) However, a hypothetical question need only reflect those impairments that are supported by the record. *See Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987). The Third Circuit "does 'not require an ALJ to submit to the [VE] every impairment *alleged* by a claimant.' Rather, the ALJ is only required to submit credibly established limitations . . . where . . . a limitation is supported by some medical evidence but controverted by other evidence in the record, it is within the ALJ's discretion whether to submit the limitation to the VE." *Zirnsak v. Colvin*, 777 F.3d 607, 615 (3d Cir. 2014) (internal citation omitted). Additionally, an ALJ is not required to credit vocational expert testimony elicited in response to a hypothetical question that includes limitations the ALJ finds not to be credible. *See Craigie v. Bowen*, 835 F.2d 56, 57–58 (3d Cir. 1987) ("Inasmuch as the [ALJ] did not have to accept [Plaintiff]'s testimony, he did not have to credit . . . expert testimony that was predicated upon it."). Furthermore, a vocational expert's testimony in response to a hypothetical question that fairly sets forth every credible limitation established by the physical evidence is substantial evidence of non-disability and satisfies step five of the sequential evaluation process. *See Plummer v. Apfel*, 186 F.3d 422, 431 (3d Cir. 1999).

Here, the ALJ found Plaintiff's subjective complaints to be inconsistent with the overall record evidence, so she was not required to include them in her hypothetical question to the VE or to credit any of the VE's testimony that was premised upon them. *See Craigie*, 835 F.2d at 57–58. Further, ALJ Allard asked the VE a hypothetical question that included all of Plaintiff's functional limitations that were supported by the record evidence, and the VE testified that an

19

individual with Plaintiff's vocational characteristics would be capable of performing thousands of sedentary jobs in the national economy.  (R. 80.)  This is substantial evidence that Plaintiff was not disabled and satisfies step five of the sequential evaluation process.  *See Plummer*, 186 F.3d at 431.  Therefore, the ALJ's findings are supported by substantial evidence, which precludes this Court from reversing simply because it could have resulted in Plaintiff's favor.  This Court will not remand this case to a different ALJ, as no basis exists other than the fact that ALJ Allard denied Plaintiff's claim.

Reviewing the ALJ's decision and the medical record as a whole, it is clear that there is substantial evidence—more than a mere scintilla—to support the ALJ's decision that Plaintiff can perform a limited range of sedentary work, including the jobs that the VE identified.  This Court will therefore affirm.

**IV.    CONCLUSION**

For the foregoing reasons, this Court finds that ALJ Allard's factual findings were supported by substantial credible evidence in the record and that her legal determinations were correct.  The Commissioner's determination is therefore **AFFIRMED**.  An appropriate order follows.

s/ *Susan D. Wigenton*
**SUSAN D. WIGENTON**
UNITED STATES DISTRICT JUDGE

Orig:   Clerk
cc:     Parties